Mr. Yoder. Good morning, Your Honor. My name is Dwight Yoder. I'm the attorney for the appellant for the District Court. I'd like to reserve two minutes of my time for rebuttal. Your Honor, the court should reverse the decision of the District Court for the following three reasons. First, the state troopers violated the First and Fourth Amendment rights of the protesters by handcuffing and arresting the protesters because the troopers found the political protest against President Bush and the war in Iraq to be offensive to bystanders and to children. Second, the state troopers' attempt to justify the arrest based on Pennsylvania's open lewdness statutes should be rejected because the law is a content-based law in that it looks to the communicative impact of the conduct as an element of the crime. Is this a facial attack on the open lewdness statute? It is not a facial attack. And third, the state troopers are not entitled to qualified immunity because the Supreme Court's First Amendment jurisprudence is well established in that in situations involving political expression and protest, the limitations when the government may interfere are very limited to obscenity, fighting words, calls to imminent and lawless activity, and none of those exceptions apply in this case. Because this is a First Amendment case involving free speech, the Supreme Court has said that the circuit must independently review the record and come to its own determination. Did the plaintiffs here violate the open lewdness statute? No. Let's say this panel decided that they did. How would our analysis then proceed? Well, I don't believe you need to analyze this under the open lewdness statute. This is a case broadly... I know what I asked you. All right. Well, if the court determined that in fact the protesters violated the open lewdness statute, then this court would still have an obligation to determine if in fact the state troopers violated the First Amendment rights of the protesters, and thereby the violation of the open lewdness statute would be called into question because it conflicts with federal law regarding First Amendment protection of free speech. Do you seriously contend that the officers here lacked probable cause to arrest the plaintiffs for their conduct given the open lewdness statute? Yes, absolutely. Probable cause of criminal activity cannot arise based on expressive conduct that is protected by the First Amendment. My First Amendment rights insulate me from any exercise of police behavior? No. Protected First Amendment rights. So, for example, in this case, if in fact there were calls for imminent lawless activity, certainly the police had every right to intervene and arrest the protesters. Or, if this would have been obscenity, the police could have intervened. What if a protester, wearing only a thong, were to walk down Market Street, as I did yesterday, as a visitor? Fully clad, I'm sure you would imply. Yes. And the protester had on his back, Mr. President Kiss My, with an arrow drawn down to his buttocks. Would the police have probable cause to arrest him under the lewdness statute? I do not believe they would. I believe that is protected. And the reason for that is there's a threshold determination that is undisputed in this case, which is, is this expressive conduct protected by the First Amendment? There may, in fact, be conduct of individuals where they wear a thong that is not expressive conduct. So you don't even go down the path of First Amendment analysis. However, once you are on that path... His or her back would not be arrested. That could be a different case. It depends on the determination if it's expressive conduct. And I would note that the court has made it clear, the Supreme Court, that questions of political dialogue, of social concern, of public importance are at the core of the First Amendment and are to be protected. There's no assertion here that the police arrested because of the message itself, or the opposition to the war. There's no assertion. We do not maintain there was viewpoint discrimination. But as we set forth in our brief, viewpoint discrimination is only a subset of content-based discrimination. We do maintain and vigorously assert that this was content-based discrimination because it looked to the effect of the communication on the bystanders, on the police, on the children. It was not content-neutral. It wasn't the effect of the message, though, was it? Absolutely. The whole point of this message was to communicate to the President, hopefully, but also to the public, the outrage that these individuals felt about the events transpiring in Iraq, and this was in the middle of a heated presidential debate, and the importance of this was to be able to communicate through a visual image how, in fact, offensive the treatment of these prisoners were as a message. So, and as set forth in the record, it is clear this kind of visual image communicates a message that cannot be communicated through a sign or through even a chance or a slogan. A reproduction of the picture that they were trying to depict. Instead of the sign that said Great War George, they had a sign the same size that had the picture itself from the prison. There's no doubt that that would have communicated a message, but I think your point is well there would have been no arrest then, would there? I don't believe there would have been an arrest. No, I believe the arrest was because of the content of the visual image. Because of the conduct, right? You cannot separate the conduct from the message, is our position. That was the whole point, and I think it was fairly ingenious. While many may disagree with how it was portrayed, it communicated a message that a picture on a sign would not have communicated. And that was, in fact, exactly what they were trying to communicate. How else do you communicate the outrage of six or seven men stripped naked, forced to stand on top of each other? How do you communicate that? That is the most effective way. Because they covered their genitalia, there was no violation of the law. Of what law? Of the public indecency law. Well, I thought we were talking about open lewdness. Well, I would, again. That's a specific statute. Judge Nygaard and I are old common-pleas court judges. Well, we're not old. We're former common-pleas court judges. We used to deal with Pennsylvania crime code quite a bit. Well, again, your initial question was if the court determined that they violated the open lewdness. My response is, I believe it's subject to the First Amendment. And then my second question went to the existence, bill known, of PC here. I'm sorry? Of probable cause. Of probable cause, right. Well, again, our argument as to probable cause is that probable cause requires, under the circumstances, which in this case there's no dispute, it's a political context, expressive conduct, that under the circumstances there's reasonable belief that a crime is being committed or about to be committed. Alright, so you concede that the open lewdness statute does not require an actual exposure of the genitals? I would concede that as long as it's not in the context of expressive conduct. I don't think it can be both ways. The state law has... How does that help us for purposes of a probable cause inquiry? Well, so in addition to knowledge of the crimes code, Pennsylvania police officers and state police officers are supposed to fully comprehend the vagaries of First Amendment jurisprudence? And recognize political expression when they see it. I certainly hope they would, and that's the purpose of the First Amendment. If our state police troopers don't recognize the First Amendment... I wish rainwater were beer, but it's not. That doesn't answer the question either. Well, I think they do need to understand the First Amendment jurisprudence is not complicated in this area in terms of the limited exceptions for suppressing conduct that is protected. There had to be obscenity, there had to be fighting words, or immoral activity, or if there was genitalia exposed, that is a content neutral law that in fact does permit those folks to arrest. So, if in fact they were completely naked, there's no question here. There's probable cause. However, the state courts and the federal courts have made it clear when interpreting and applying state criminal laws, they have to be done consistent with the First Amendment. You cannot criminalize conduct or speech that is protected by the First Amendment. It violates the Supremacy Clause. That is why we have the First Amendment. And in this case, there was not a challenge to the Open Ludus statute. There was a challenge to the conduct in arresting the protesters. It was the state troopers who have come back and said, well, wait a second, here's the Open Ludus statute, and that's our justification. And we're prepared, and we have responded to that. But I submit to the court that the analysis is much more straightforward than going lost into state criminal code. The Supreme Court has said there are protected areas. This is expressive conduct that's protected. There's no dispute that they were arrested because it was offensive to the content based on Texas v. Johnson and Boos v. Berry. That sets forth that this action was based on the content of the message. Therefore, there are limited exceptions. Otherwise, it's strict scrutiny review. There's no argument from the state troopers that they've satisfied strict scrutiny. What the state troopers have argued is, in fact, that this is a content-neutral action or that the Open Ludus law is content-neutral. When you look at the language of the Open Ludus statute, it is not content-neutral. It has a word called lewd as part of the statute, and it requires that the lewd action affront or offend others. That is amazingly similar to the exact language in Texas v. Johnson where the Supreme Court said, because the act, the statute, looks to the communicative impact on the bystanders, it is content-based. Because it is content-based, it has to fall within one of those limited exceptions before the government is allowed to intervene and suppress or censor that. I see my time is almost up. If there's no other questions, I'll... Thank you. Mr. Knorr. May it please the court, my name is John Knorr. I'm with the Pennsylvania Attorney General's Office, and I represent the four state troopers who are the appellees in this case. Your honors, in this country, we consider   We consider them to be the most important members of the public. We can say pretty much whatever we want, but while we can say anything we want, that doesn't mean that we can do anything we want, even if we intend by our actions to quote, send a message. As the Supreme Court said in the Spock case some years ago, the First Amendment guarantees have never been thought to guarantee the right of people who want to propagandize their views, the ability to do so whenever and wherever and however they want. So the question here today isn't whether the e-golf group's activities had some political content. Of course it did. The question is whether Pennsylvania was regulating their behavior based upon that content, and we think it's clear that we were not. The public allusion statute is not content based. It has nothing in common with enactments which have been held to be content based. We have a list of cases in our brief laws that say you can't show certain movies, you can't use certain words, you can't put up certain kinds of signs. Tell me why Texas v. Johnson doesn't illuminate this statute? Well, I guess it illuminates it as kind of a mirror image because our statute isn't anything like the Texas statute in the Johnson case. The Johnson statute was expressly directed at flag burning, which as the Supreme Court said, is an inherently expressive act. Going naked is not an inherently expressive act, as the Supreme Court has also said. In addition, the purpose behind the Texas statute was directly to suppress certain ideas which the state of Texas found uncongenial to its ideas of patriotism. Our statute is a public looting statute. It doesn't matter if you intend to send a pro-Bush message, or an anti-Bush message, or just to honk off the bystanders, or if you have no message at all and you're just trying to get a tan. It doesn't make any difference. And that, by definition, means that the statute is content neutral. I think it's important to realize as well that the logic of the appellant's argument has no principal stopping point. They make a point of saying that, well, if the EGOL group had been completely naked, that would be different. But it's not different. The logic of their argument, if it works here, works just as well if they were totally nude. It would work just as well for acts, say, of elimination, which would be powerfully symbolic acts of real or simulated sex. They say, well, the obscenity standard would provide a limit. Miller versus California. And it really doesn't. In the first place, the Supreme Court has said that there's no equivalence between the printed page or the filmed screen to which Miller applies, and acts of what you might call real-life nudity. And in addition to that, in the appellant's own brief, when they apply the Miller standard to this case, they make it clear that no political protest could ever flunk it. There would always be, if it was a bona fide political protest, there would always be some significant political value to the demonstration. Some communicative effect. Sure. So you would never flunk the Miller test. And therefore, the limit that they say Miller would supply is completely illusory. And that's why we say that the logic of their argument has no stopping place. Mr. Noor, if the plaintiffs, the appellants here, did not violate the open lewdness statute, don't we then have a First Amendment violation? If they did not violate the open lewdness statute? No. What you would have is a Fourth Amendment violation. Well, maybe you'd have one. Because the question would be, what's the problem? I'm sorry. I'm not a Fourth Amendment. I misspoke. You might have a Fourth Amendment violation because then the question would be, well, was there probable cause to think that they had violated the open lewdness statute? We would say, of course, that even though there is no case law from Pennsylvania directly on point, the likelihood is that a state court would find them guilty. But even if they wouldn't have ultimately been convicted, there's still a probable cause to think that they violated the statute. I seem to have made the points that I wanted to make, Your Honors, and I have a lot of time remaining, but unless there are further questions... Do you want to speak to the assertion that at a minimum there's qualified immunity here? I took it that that was sort of a last-ditch argument you make. I can't see how there could not be qualified immunity in this case. As to the Fourth Amendment issue, where there is no clear case law from the state courts giving guidance, I don't see how there could not be qualified immunity based on the content of the statute. As to the First Amendment issue, I'm not aware of any case, and the appellants haven't cited any case which is remotely similar to this one and where there has been found to be First Amendment liability, and that seems to me to answer the immunity question in and of itself. Thank you. Thank you, Your Honors. Thank you very much. Thank you. Just very briefly, I'd like to respond to what appears to be confusion by the Counsel for the State Troopers as well as the District Court between nudity and obscenity. The Supreme Court has made clear that those are very two different analyses under the First Amendment. The District Court in its analysis confused the two, and at times relied on public nudity statutes to justify its rationale. Public nudity statutes look to see if genitalia were exposed. It's content neutral. Open lewdness requires the government actors to make a determination on the content. It says, what is lewd? What is lewd? What is lewd? It's not content neutral. Furthermore, the state law at issue here relied upon by the State Trooper says that affronts others. Back to the question how this relates to Texas v. Johnson, that's the exact language that the Texas statute had regarding desecrating the flag, if it affronts others. I would submit to the Court that the analysis needs to delineate between content neutral and content based applications or regulations of expressive conduct that is protected. So if we're all confused about this, defense counsel, the District Court, speaking only for myself, me too, the state police officers were supposed to have this all right, right on the scene for purposes of the qualified immunity. Well, I think there's a different question between understanding how to respond to a situation and whether the First Amendment jurisprudence is well known and developed. And having our cases said that with respect to enacted statutes, police officers have an obligation to enforce them as they're written and let the constitutional challenges be ironed out here. We're confused here one or the other. Well, I think in certain circumstances that's correct, Your Honor, particularly when they are trying to enforce a statute that's later challenged as facially unconstitutional. In this case, this is an open lewdness statute is one that can be applied across the board, both to expressive conduct and not expressive conduct. A state trooper cannot go into a political demonstration and find something offensive, and even though it's protected under the First Amendment, say I'm going to arrest these individuals. I'm going to censor what they're saying because I find it offensive. I think it violates the open lewdness statute and therefore I'm going to handcuff you and haul you away. That violates the First Amendment, and I believe it violates clearly established First Amendment law. Thank you. Thank you very much. Thank you, counsel. We will take the case under advisement. Thank you.